Joan B. Tucker Fife SBN (144572)
JFife@winston.com
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA  94111-5840
Telephone:      (415) 591-1000
Facsimile:      (415) 591-1400

Emilie C. Woodhead SBN (240464)
ewoodhead@winston.com
Winston K. Hu SBN (306677)
WHu@winston.com
WINSTON & STRAWN LLP
333 S. Grand Ave.
Los Angeles, CA 90071-1543
Telephone:      +1 213-615-1700
Facsimile:      +1 213-615-1750

Attorneys for Defendant
U.S. BANK NATIONAL ASSOCIATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KALIEN FRAZIER, on behalf of himself and others similarly situated,, <br><br> Plaintiff, <br><br> vs. <br><br> U.S. BANK NATIONAL ASSOCIATION; and DOES 1 to 100, inclusive, <br><br> Defendant. | **Case No.**  4:23-cv-05675 <br><br> **DEFENDANT U.S. BANK NATIONAL ASSOCIATION'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT** <br><br> Complaint Filed:  September 6, 2023 |

**TO PLAINTIFF KALIEN FRAZIER AND HIS ATTORNEYS OF RECORD AND TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1332 (as amended by the Class Action Fairness Act 2005, Pub. L. 109-2, section 4(a) (the "CAFA")), 1441(a) and (b), and 1446, Defendant U.S. Bank National Association ("Defendant") hereby removes the above-entitled action to this Court from the Superior Court of the State of California for the County of Alameda ("Superior Court"). In support of removal, Defendant states as follows:

## I.      INTRODUCTION

1.      This case is hereby removed from state court to federal court pursuant to 28 U.S.C. § 1332 because at the time the Class and Representative Action Complaint was filed, and at this time: (1) Plaintiff Kalien Frazier ("Plaintiff") proposed putative class includes more than 100 members; (2) diversity of citizenship exists; and (3) the amount placed in controversy by Plaintiff's claims exceeds $5,000,000, exclusive of interest and costs. Therefore, this Court has original jurisdiction under 28 U.S.C. § 1332(d).

## II.      THE STATE COURT ACTION

2.      On September 6, 2023, Plaintiff filed an action in the Superior Court of California in and for Alameda County entitled *Kalien Frazier vs. Bank National Assoc.,* Case No. 23CV042876. Plaintiff served the Complaint on Defendant on October 6, 2023.

3.      Plaintiff's Complaint seeks recovery of monetary damages, penalties, and other relief against Defendant in connection with the following alleged causes of action: (1) alleged failure to pay wages in violation of California Labor Code sections 1194 and 1197; (2) alleged failure to overtime pay wages for daily overtime worked and failure to include additional remuneration when calculating overtime wages in violation of California Labor Code section 510 and 1194; (3) alleged failure to pay meal period premium wages at the regular rate of pay in violation of Labor Code sections 512 and 226.7; (4) alleged failure to pay rest period premium wages at the regular rate of pay in violation of California Labor Code section and 226.7; (5) alleged failure to pay sick wages for accrued paid sick days at the regular rate of pay in violation of California Labor Code section 246; (6) alleged failure to provide complete accurate itemized wage statements in violation of California Labor Code section 226; (7) alleged failure to timely pay all earned wages and final paychecks due at time of separation of employment in violation of

California Labor Code sections 201, 202, and 203; and (8) alleged unlawful and unfair business practices in violation of California Business and Professions Code section 17200, *et seq.*

4.     On October 31, 2023, Defendant timely filed and served its Answer to the Complaint in the Superior Court.

5.     A true and correct copy of the Summons and Complaint is attached hereto as **Exhibit A.** A true and correct copy of Defendant's Answer is attached hereto as **Exhibit B**. A true and correct copy of the Civil Case Cover Sheet as **Exhibit C**. A true and correct copy of Plaintiff's Notice of Case Management Conference is attached hereto as **Exhibit D**. A true and correct copy of the Superior Court of California, County of Alameda's Alternative Dispute Resolution (ADR) Information Packet is attached hereto as **Exhibit E**. Defendant has not been served with any other process, pleadings, or orders as of the date of this filing.

### III.     JOINDER

6.     Defendant has been served with a copy of the Complaint.

7.     Plaintiff also names "Does 1 to 100" as defendants. These Doe defendants have no bearing on the Court's diversity jurisdiction over this action. *See* 28 U.S.C. § 1441(b) (defendants sued under fictitious names disregarded).

8.     No other defendants are named in the Complaint.

### IV.     TIMELINESS OF REMOVAL

9.     This Notice of Removal has been filed within thirty (30) days after Defendant was served with a copy of Plaintiff's Complaint upon which this action is based. This Notice of Removal therefore is filed within the time period provided by 28 U.S.C. § 1446(b) because Plaintiff served the Complaint on Defendant on October 6, 2023.

10.     As required by 28 U.S.C. § 1446(d), Defendant will provide written notice of the filing of this Notice of Removal to Plaintiff's attorneys of record, and will promptly file a copy of this Notice of Removal with the Clerk for the Superior Court of the State of California in and for Alameda County.

### V.     VENUE IS PROPER

11.     Venue lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. sections 1441(a) and 1391(c) because the state action was filed in this district and

Defendant is subject to personal jurisdiction in the Northern District of California.

## VI.   JURISDICTION PURSUANT TO CAFA

12.    Pursuant to CAFA, "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). CAFA also provides for jurisdiction in the district courts where the proposed class involves 100 or more members, or where the primary Defendant is not State, State Officials, or other governmental entities. 28 U.S.C. § 1332(d)(5). Thus, as set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. section 1332(d) because it is a civil action filed as a class action involving more than 100 members; the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, based on the allegations that Plaintiff set forth in the Complaint; Plaintiff and Defendant are citizens of different states; and no Defendant is a state, state official, or government entity.

### A.   Numerosity

13.    CAFA provides that the district courts shall not have jurisdiction over actions "where the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5). Plaintiff seeks to represent all "current, former, and/or future employees of Defendants as direct employees as well as temporary employees employed through temp agencies who work as hourly non-exempt employees." (Complaint, ¶ 3.) Plaintiff proposes 9 subclasses as follows:

a) **Minimum Wage Class**: All current and former hourly non-exempt employees employed by Defendants as direct employees as well as temporary employees employed through temp agencies in California at any time from four (4) years prior to the filing of the initial Complaint in this matter through the date notice is mailed to a certified class who were not paid at least minimum wage for all time they were subject to Defendants' control.

b) **Overtime Class:** All current and former hourly non-exempt employees employed by Defendants as direct employees as well as temporary employees employed through temp agencies in California at any time from four (4) years prior to the filing of the initial Complaint in this matter through the date notice is mailed to a certified class who worked more than eight (8) hours in a workday, forty (40) hours in a workweek, and/or seven (7) days in a workweek, to whom Defendants did not pay overtime wages.

c) **Regular Rate Class:** All current and former hourly non-exempt employees employed by Defendants as direct employees as well as temporary employees employed through temp

agencies in California at any time from four (4) years prior to the filing of the initial Complaint in this matter through the date notice is mailed to a certified class who worked more than eight (8) hours in a workday, more than forty (40) hours in a workweek, and/or seven (7) days in a workweek, who received additional remuneration during pay periods in which they were paid overtime wages, and whose compensation did not include such additional remuneration when Defendants calculated those employees' overtime wages.

d) **Meal Period Premium Wages Class**: All current and former hourly nonexempt employees employed by Defendants as direct employees as well as temporary employees employed through temp agencies in California at any time from four (4) years prior to the filing of the initial Complaint in this matter through the date notice is mailed to a certified class who received additional remuneration during pay periods in which they were paid meal period premium wages and whose regular rate of pay did not include such additional remuneration when Defendants calculated those employees' meal period premium wages.

e) **Rest Period Premium Wages Class**: All current and former hourly nonexempt employees employed by Defendants as direct employees as well as temporary employees employed through temp agencies in California at any time from four (4) years prior to the filing of the initial Complaint in this matter through the date notice is mailed to a certified class who received additional remuneration during pay periods in which they were paid rest period premium wages and whose regular rate of pay did not include such additional remuneration when Defendants calculated those employees' rest period premium wages.

f) **Sick Time Pay Class:** All current and former hourly non-exempt employees employed by Defendants in California at any time from four (4) years prior to the filing of the initial Complaint in this matter through the date notice is mailed to a certified class who received additional remuneration during pay periods in which they accrued sick pay and whose regular rate of pay did not include such additional remuneration when Defendants calculated those employees' sick pay wages.

g) **Wage Statement Class**: All current and former hourly non-exempt employees employed by Defendants as direct employees as well as temporary employees employed through temp agencies in California at any time from one (1) year prior to the filing of the initial Complaint in this action through the date notice is mailed to a certified class who received inaccurate or incomplete wage and hour statements.

h) **Waiting Time Class**: All current and former hourly non-exempt employees employed by Defendants as direct employees as well as temporary employees employed through temp agencies in California at any time from three (3) years prior to the filing of the initial Complaint in this action through the date notice is mailed to a certified class who did not receive payment of all unpaid wages upon separation of employment within the statutory time period.

i) **California Class**: All aforementioned classes are herein collectively referred to as the "California Class."

14.     Collectively, there are approximately **9,803** individuals within the scope of the putative class, based on the broad definitions above, including all non-exempt employees of Defendant in California since September 6, 2019. Therefore, the numerosity requirement for CAFA jurisdiction set forth in 28 U.S.C § 1332(d)(5) is satisfied.

**B.     Diversity of Citizenship**

15.     CAFA's diversity requirement is satisfied when any member of a class of plaintiffs is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2). The citizenship of the parties is determined by their citizenship status at the action's commencement. *See Mann v. City of Tucson*, 782 F.2d 790, 794 (9th Cir. 1986).

**a.     Plaintiff and at least one other putative class member are citizens of California.**

16.     To establish citizenship for diversity purposes, a natural person must be both: (a) a citizen of the United States, and (b) a domiciliary of one particular state. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). A party's residence may serve as *prima facie* evidence of that party's domicile. *State Farm Mut. Auto. Ins. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).

17.     Plaintiff alleges that he is and was a resident of California and was employed by Defendant un the State if California within four (4) years prior to filing this Complaint; Plaintiff also alleges that he was an hourly non-exempt employee from approximately October 9, 2021 until on or about March 30, 2023. (Complaint, ¶¶ 3-4.) Based on information from Plaintiff's personnel file, which includes information he submitted to Defendant throughout the course of his employment, Plaintiff consistently listed a California address as his current address, which further demonstrates his "intention to remain" in California and establishes domicile in California. *See Wilson v. CitiMortgage*, 2013 WL 6871822, at *2 (C.D. Cal. Dec. 17, 2013) (noting that other objective facts, including plaintiff's place of employment, may further establish a plaintiff's citizenship for purposes of removal). Plaintiff is therefore a citizen, domiciliary, and resident of the State of California.

18.     Plaintiff also alleges that "more than two-thirds of the putative class members are California citizens." (Complaint, ¶ 2.) Indeed, the vast majority of Defendant's non-exempt employees in

California are citizens of California and have their domicile in California.

**b.     Defendant is not a Citizen of California.**

19.     Defendant U.S. Bank National Association was, at the time of the filing of this action, and still is, a citizen of a state other than California. U.S. Bank National Association was and is a national banking association with its main office in Cincinnati, Ohio. Accordingly, U.S. Bank National Association was and is a citizen of Ohio. *See* 28 U.S.C. § 1348 ("All national banking associations shall, for purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located"); *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006) (holding that a national bank, for purposes of 28 U.S.C. § 1348, "is a citizen of the state in which its main office, as set forth in its articles of association, is located").

20.     As noted above, Plaintiff also names "Does 1 to 100" as defendants. Doe defendants have no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(b) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 12009, 1213 (9th Cir. 1980) (unnamed defendants need not join in the removal petition). Thus, the existence of Doe defendants 1 through 100 does not deprive this Court of jurisdiction.

21.     Therefore, diversity of citizenship under CAFA is established because Plaintiff is a citizen of California and U.S. Bank National Association is a citizen of Ohio. *See* 28 U.S.C. § 1332(d)(2) (where the amount in controversy is satisfied, "[t]he district courts shall have original jurisdiction of any civil action . . . in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant.").

**C.     The Amount in Controversy Exceeds $5,000,000**

22.     CAFA authorizes the removal of class action cases in which, among the other elements described above, the amount in controversy for all class members exceeds $5,000,000. 28 U.S.C. § 1332(d). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014). Defendant's Notice of Removal

must contain a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 87.

24.     In determining whether the amount in controversy exceeds $5,000,000, the Court must presume that Plaintiff will prevail on each and every one of his claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim, but rather by reasonable reading of the value of the rights being litigated"). That is, the amount in controversy refers to "***possible*** liability"—not "likely or probable liability." *Jauregui*, *v. Roadrunner Transp. Servs.*, 28 F.4th 989, 994 (9th Cir. 2022) (citing *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020) (emphasis in original)). It is "supposed to be an estimate of the ***entire*** potential amount at stake in the litigation." *Id.* (emphasis in original).

25.     Defendant vigorously denies the merits of each of Plaintiff's claims and the theories upon which recovery is sought; however, for the sole purpose of determining whether jurisdiction exists pursuant to CAFA, it assumes Plaintiff will prevail on each of his claims.

26.     The amount in controversy for all class members exceeds $5,000,000, exclusive of interest and costs. As noted above, there are approximately ***9,803*** individuals within the scope of the putative class. Analysis of these individuals time and pay records shows that the weighted average hourly rate of pay for these employees is approximately $25.79, and the estimated average shift length for these employees is approximately 8.01 hours.

27.     **Waiting Time Penalties**. Plaintiff alleges that he and the putative class members are entitled to penalties pursuant to California Labor Code section 203, and seeks penalties of up to 30 days of additional wages ("Waiting Time Penalties") based upon Defendant's alleged failure to pay all unpaid wages at termination. (Complaint, ¶ 46.) Waiting Time Penalties may be included when determining the amount in controversy, and are calculated at the terminated employee's daily wage rate multiplied by up to 30 days. *See Cavada v. Inter-Cont'l Hotels Grp., Inc.*, No. 19CV1675-GPC(BLM), 2019 WL 5677846, at *9 (S.D. Cal. Nov. 1, 2019) (considering waiting time penalties as part of the amount in controversy and denying motion to remand); *see also Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (1998), as modified

(Dec. 11, 1998) ("the critical computation required by section 203 is the calculation of a daily wage rate, which can then be multiplied by the number of days of nonpayment, up to 30 days").

28.     There are at least *3,146* individuals within the scope of Plaintiff's "Waiting Time Penalties Class" because these individuals were non-exempt employees terminated between September 6, 2020 and July 7, 2023.[1]

29.     Courts approve using a 100% violation rate for determining the amount in controversy of plaintiffs' waiting time penalties claim under Labor Code section 203 when based on derivative claims, such as here. *Wilcox v. Harbor UCLA Med. Ctr. Guild, Inc.*, 2023 WL 5246264, at *12 (C.D. Cal. Aug. 14, 2023); *Salonga v. Aegis Senior Cmtys., LLC*, No. 22-cv-00525-LB, 2022 WL 1439914, at *4 (N.D. Cal. May 6, 2022) ("[C]ourts . . . have accepted a 100-percent violation rate where the plaintiff has (1) tied waiting-time penalties to other claims and (2) the defendant specifically accounts for only terminated employees.") (collecting cases); *Noriesta v. Konica Minolta Bus. Solutions U.S.A.*, 2019 WL 7987117, at *6 (C.D. Cal. Jun. 21, 2019) (reasonable to assume all or nearly all employees would be entitled to recovery of waiting time penalties based on alleged minimum wage and meal and rest break violations). This is because "recovery of waiting time penalties does not hinge on the number of violations committed; rather Defendants 'need only have caused and failed to remedy a single violation per employee for waiting time penalties to apply.' " *Id.* Because any underpayment of wages could form the basis for a waiting time penalty claim—and because Plaintiff alleges underpayment of the putative class members as a result of a numerous Defendant policies, practices and procedures—it is fair here to assume a 100% violation rate for waiting time penalties. (*See, e.g.*, Complaint, ¶¶ 24, 31, 33, 52-53, 63.)

30.     Because Plaintiff seeks 30 days of Waiting Time Penalties pursuant to Labor Code section 203 and because each of the 3,146 terminated putative class members noted above were terminated more than 30 days ago (*i.e.*, on or before July 7, 2023), the amount in controversy for Plaintiff's Waiting Time Penalties claim is **$17,680,536**.[2] This amount is more than 350 percent greater than $5 million. Thus,

---

[1] Actual numbers and corresponding calculations will be higher because this number does not include the additional employees terminated since July 7, 2023 and the present.

[2] To reach this number, Defendant individually calculated the Waiting Time Penalties owed to each terminated employee based on their hourly rate at the time of termination, *i.e.*, the sum of each 3,146 terminated putative class member's final hourly rate multiplied by 8 hours and 30 days.

accepting Plaintiff's allegations as true for the purposes of removal only, the potential recoverable damages for Plaintiff and the putative class members' in Waiting Time Penalties alone exceeds the amount in controversy requirement for the purposes of determining jurisdiction under CAFA. Indeed, even assuming that less than 30 percent of the 3,146 terminated putative class members suffered any underpayment of wages (*i.e.*, that more than 70 percent of the putative class members terminated between September 6, 2020 and July 7, 2023 did *not* suffer even one of the many alleged wage violations alleged, including for unpaid off-the-clock work, unpaid overtime, unpaid sick time, or non-compliant meal or rest breaks), the amount in controversy for Plaintiff's Waiting Time Penalties claim alone still crosses CAFA's jurisdictional threshold.[3]

31.    **Attorneys' Fees**. Plaintiff also seeks an unspecified amount of attorneys' fees in the Complaint. (Complaint at Prayer.) Attorneys' fees are properly considered when determining the amount in controversy for the purposes of removal. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("where an underlying statute authorizes an award of attorneys' fees . . . such fees may be included in the amount in controversy"). The Ninth Circuit has established "25 percent of the fund as the benchmark for a reasonable fee award in common fund cases." *In re Bluetooth Headset Prods. Liab. Lit.*, 654 F.3d 935, 942 (9th Cir. 2011); *In Re Nat'l Collegiate Athletic Assoc. Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, *2 (N.D. Cal. 2017) (the 25% benchmark is "presumptively reasonable."). Therefore, the amount of attorneys' fees at issue based only on the recoverable Waiting Time is approximately **$4,420,134**. At minimum, a 10 percent benchmark is reasonable in determining the amount in controversy for Plaintiff's attorneys' fees, which amounts to **$1,768,053**. *Demaria v. Big Lots Stores – PNS, LLC*, 2023 WL 6390151, *20 (E.D. Cal. Sep. 29, 2023)  (holding that it was reasonable to assume that attorneys' fees would *exceed* 10 percent in similar class action).

32.    Plaintiff also seeks other damages, fees, and penalties, including for declaratory judgment, injunctive relief, unpaid wages, unpaid overtime and premium wages, unpaid sick time, wage statement penalties, non-compliant meal and rest breaks, liquidated damages, statutory penalties, and related attorneys' fees. (*See* Complaint, Prayer of Relief.) CAFA's jurisdictional threshold is met ***without taking***

---

[3] 30 percent of $17,680,536 is $5,304,160.

*any of these damages and penalties into account.*

33.     Accordingly, based on Plaintiff's Waiting Time Penalties claim alone, ***at a minimum, the amount in controversy is $19,448,589*** (Waiting Time Penalties liability plus 10 percent conservative estimate for related attorneys' fees), which is well beyond the threshold for purposes of removal under CAFA.

**D.     Conclusion: Jurisdiction is proper under CAFA.**

34.     Based on the foregoing, removal jurisdiction is proper under CAFA because (a) there are more than 100 putative class members, (b) Plaintiff and Defendant are diverse, and (c) the amount in controversy exceeds $5,000,000.

WHEREFORE, Defendant removes the above-entitled action now pending in the Superior Court to this Court.

Dated:  November 2, 2023                    WINSTON & STRAWN LLP


                                            By  */s/ Joan B. Tucker Fife*
                                                Joan B. Tucker Fife
                                                Emilie C. Woodhead
                                                Winston K. Hu
                                                Attorneys for Defendant
                                                U.S. BANK NATIONAL ASSOCIATION